Jack DUNNING and Medirate
Professional Pharmacy, Inc.,
Plaintiffs-Respondents,

v.

BOARD OF PHARMACY, State of
Missouri, Defendant-Appellant.

Nos. 43504, 43505.

Missouri Court of Appeals,
Eastern District,
Division Two.

Jan. 12, 1982.

Motion for Rehearing or to Transfer to Supreme Court Denied Feb. 19, 1982.

Application to Transfer Denied
April 13, 1982.

John Ashcroft, Atty. Gen., Gregory W. Schroeder, Asst. Atty. Gen., Jefferson City, for defendant-appellants.

James E. Alexander, Medley & Alexander, Farmington, for plaintiffs-respondents.

GUNN, Judge.

Defendant Board of Pharmacy (the Board) appeals from the trial court's reversal of its order suspending plaintiff Jack Dunning's pharmacist license and placing plaintiff Medirate Professional Pharmacy, Inc. on probation. The trial court held that the decision to discipline Dunning and Medirate was not supported by competent and substantial evidence; further, that the Board's procedures were unlawful for failing to hear the evidence or read the record of proceeding before the Administrative Hearing Commission (the Commission). We reverse.

Dunning, licensed as a Missouri pharmacist, was chief pharmacist and owner of Medirate, a Missouri corporation authorized by permit from the Board to operate a retail pharmacy. In 1977, during the course of a routine inspection of Medirate, an inspector for the Board observed individuals behind the pharmacy counter handling prescriptions, dispensing medications and making sales of these particular items. However, there was no pharmacist in attendance in the store. After waiting about fifteen minutes, the inspector saw Dunning enter the store through a back door. When confronted by the inspector, Dunning acknowledged that no pharmacist had been present during the course of events, and he apologized for that fact.

The inspector immediately wrote his report stating: "No pharmacist on duty—pharmacy was busy—prescriptions being filled by unregistered personnel—no supervision." Dunning signed the report, and it

and a summary of the incident were subsequently submitted to the Missouri Board of Pharmacy.

Upon receipt of the inspector's report, the Board filed complaints against Dunning and Medirate, alleging that they were subject to discipline pursuant to sections 338.010, RSMo 1969; 338.055.3(9), RSMo Supp. 1975; and 338.285, RSMo Supp. 1975; and 4 CSR 220–2.010(1)(A). The matter was referred to the Administrative Hearing Commission for hearing. The two cases were consolidated, and the evidence mentioned was presented before a hearing officer. Dunning and Medirate presented no evidence in their behalf.

The Commission concluded that Dunning violated section 338.010, which makes it "unlawful for any owner . . . of a pharmacy . . . to cause or permit any other than a person licensed as a pharmacist to compound, dispense or sell at retail, any drug, medicine or poison, except as an aid to or under the direct supervision of a person licensed as a pharmacist . . .," and 4 CSR 220–2.010(1)(A), which prohibits compounding a prescription or accepting one for compounding unless there is a pharmacist on duty. The Commission also concluded that Dunning's pharmacist license was subject to suspension or revocation under section 338.-055.3(9) and that Medirate's permit was subject to suspension or revocation under section 338.285. It recommended that the Board revoke Dunning's license and Medirate's permit.

The Board conducted a disciplinary hearing in accordance with section 161.292, RSMo 1978, attended by all the Board members and by Dunning and his counsel. The state presented its evidence, consisting of the complete record of the hearing before the Commission, and urged the Board members to consider the record, inviting their particular attention to the Commission's findings of fact, conclusions of law and decision. Counsel for Dunning and Medirate argued that the Commission's decision was not based on competent and substantial evidence with respect to either Dunning or Medirate.

The Board moderated the penalties recommended by the Commission but did order suspension of Dunning's license for six months and probation for one and one-half years thereafter and placement of Medirate's permit on probation for two years.

Setting the stage for the trial court's review of the Board's decision was the deposition of one of the Board members in which he acknowledged that he had not read the entire record of the Administrative Hearing Commission's hearing. Instead, he had been guided by the inspector's report and the Commission's recommendations after having been fully apprised by the Board's secretary of the findings and conclusions of the Commission leading to the disciplinary recommendations.

The trial court in its judicial review reversed and remanded, finding that the decisions of the Board of Pharmacy and Administrative Hearing Commission were "unsupported by competent and substantial evidence upon the whole record." It found further that the Board's decision was based on a defective procedure in violation of section 536.080, RSMo 1978, in that the Board in reaching its decision had neither heard the evidence adduced nor read the record, including that presented before the Commission.

■ The fundamental precepts which apply to these proceedings are that a reviewing court may not set aside an administrative agency's decision unless, considering the evidence in the light most favorable to the agency's action, it finds that action to be unsupported by competent and substantial evidence on the whole record. *City of Kennett v. Labor and Industrial Relations Commission*, 610 S.W.2d 623, 626 (Mo.banc 1981) [quoting *Board of Education v. Shank*, 542 S.W.2d 779, 781–82 (Mo.banc 1976)]. *See also* § 536.140, RSMo 1978; § 161.338, RSMo 1978.

■ Our examination of the entire record reveals competent and substantial evidence in support of the Commission's decision that Dunning and Medirate violated Missouri statutes and regulations governing the con-

duct of pharmacists and pharmacies and were, therefore, subject to discipline.

It is unlawful for a pharmacy owner to allow anyone not licensed as a pharmacist "to compound, dispense or sell" drugs unless the person is acting as the aid to or under the direct supervision of a licensed pharmacist. § 338.010, RSMo 1969. Physicians' prescriptions may not be compounded or accepted for compounding in a pharmacy when a licensed pharmacist is not on duty, and a sign must be posted in the pharmacy informing the public that no pharmacist is present. 4 CSR 220–2.010(1)(A). *See also* 338.240(4), RSMo 1969, requiring a pharmacy to employ a registered pharmacist to compound prescriptions. Conduct that violates Missouri statutes and regulations governing pharmacists and pharmacies constitutes basis for revocation of the pharmacist's license or pharmacy's permit. § 338.-055.3(9), RSMo Supp. 1975; § 338.285, RSMo Supp. 1975.

■ In this case, the Board's inspector observed individuals at Medirate who were not registered pharmacists filling prescriptions and dispensing medications at a time when no registered pharmacist was present on the pharmacy premises. Dunning, the chief pharmacist-owner of Medirate, executed the inspector's report describing the violations. In view of this evidence, the trial court erred in reversing the Commission's decision on the basis that it was unsupported by competent and substantial evidence. *See Duensing v. Huscher*, 431 S.W.2d 169, 173–74 (Mo.1968) (§ 338.010, RSMo 1959 was violated when a drugstore employee who was not a registered pharmacist filled a physician's prescription without the supervision of a licensed pharmacist).

The next matter for consideration is the trial court's ruling that the Board followed an unlawful procedure in direct derogation of section 536.080, RSMo 1978, in that at least one member of the Board neither heard the evidence nor read the record adduced before the Commission prior to determining the appropriate discipline to impose on Dunning and Medirate. Section 536.080, relied on by Dunning and Medirate, provides:

[i]n contested cases, each official of an agency who renders or joins in rendering a final decision shall, prior to such final decision, either hear all the evidence, read the full record including all the evidence, or personally consider the portions of the record cited or referred to in the arguments or briefs.

The Board presents several arguments to support its contention that it followed a lawful procedure in determining respondents' discipline: that section 536.080 is inapplicable to a disciplinary hearing as it is not a contested case and that by reason of section 161.322, RSMo 1978, the provisions of chapter 536 are applicable only to the Commission; that it properly complied with the procedure established in section 161.292; that if required to examine the whole record compiled before the Commission the Board would thereby invade the Commission's exclusive functions of fact finding and reaching conclusions as to whether the licensee is guilty of proscribed conduct, thereby placing an undue burden on the Board; and, finally, that its failure to read the Commission's record in this case was harmless error, if error at all.

■ Contrary to the Board's assertions, a disciplinary proceeding is a contested case. Section 536.010(2), RSMo 1978, defines "contested case" as "a proceeding before an agency in which legal rights, duties or privileges of specific parties are required by law to be determined after a hearing." The decisive factor that renders the Board's disciplinary proceeding a "contested case" is that it is required to determine suitable discipline after a *hearing*, unless the hearing is waived. § 161.292. *See Randle v. Spradling*, 556 S.W.2d 10, 11 (Mo. banc 1977); *State v. Jensen*, 318 S.W.2d 353, 356 (Mo. banc 1958); *Hunter v. Madden*, 565 S.W.2d 456, 459 (Mo.App.1978); *Williams v. Jones*, 562 S.W.2d 391, 396 (Mo.App.1978); *Vorbeck v. McNeal*, 560 S.W.2d 245, 250 (Mo.App.1977). And certainly in a disciplinary hearing the Board determines the party's legal rights, duties or privileges, since the result may be the revocation, suspension

or probation of an occupational license or permit. This case readily fits in the section 536.010(2) definition of a contested case. *Application of 354 Skinker Corp.*, 622 S.W.2d 724, 727 (Mo.App.1981).

 Section 536.080 applies, therefore, to disciplinary proceedings before licensing boards.[1] But it requires only that all Board members either hear the evidence or read the record adduced at the *disciplinary hearing* before they join in rendering a decision on appropriate discipline. The statute does not compel licensing boards to read the entire record compiled at the earlier proceeding before the Commission. As the Board correctly contends, it is the Commission's exclusive function to conduct evidentiary hearings and decide the issue of whether there is cause to discipline a licensee or permittee. A licensing board is not required to redetermine this issue at its disciplinary proceeding. *State Board of Registration for the Healing Arts v. Finch*, 514 S.W.2d 608, 613–15 (Mo.App.1974); *State Board of Registration for the Healing Arts v. Masters*, 512 S.W.2d 150, 160 (Mo.App.1974); *State ex rel. American Institute of Marketing Systems, Inc. v. Missouri Real Estate Commission*, 461 S.W.2d 902, 906–08 (Mo.App.1970). The Board had before it the complete record and transcript of the Commission's proceedings. It may examine these in whole or part to assist it in resolving the issue of appropriate discipline. § 161.292. The licensee may direct the Board's attention to portions of the Commission's record that are relevant to the disciplinary question. *Id.* But to insist that the Board read all evidence considered by the Commission would constitute an unlawful intrusion on and unnecessary duplication of the Commission's function. Further, it would unduly burden the licensing board, which, through its employees, has initially investigated the matter, filed a complaint with the Commission and served as the adverse party to the licensee at the Commission's proceedings. § 161.282, RSMo 1978; §§ 338.055.2, .285, RSMo 1978.

 The Board fully complied with sections 161.292 and 536.080 in reaching a decision as to the appropriate discipline for Dunning and Medirate. It received a complete record of the proceedings before the Commission and considered the Commission's findings of fact and conclusions of law, held a hearing attended by all Board members and was receptive to evidence relevant to the issue of discipline. The trial court erred, therefore, in finding that the decision of the Board was rendered upon an unlawful procedure and reversing it on that ground.

The judgment of the trial court is reversed, and the decision and order of the Commission and Board reinstated.[2]

DOWD, P. J., and SIMON, J., concur.

---

1. We disagree also with the Board's assertion that section 536.080 is inapplicable to its proceedings because § 161.322, RSMo 1978 specifically makes chapter 536 applicable only to the Commission, not to licensing boards. Chapter 161 creates the Commission, so the direct concern of its provisions is the operation of the Commission, not licensing boards. The omission of licensing boards from section 161.322, therefore, cannot be given the significance urged by the Board, particularly in the face of the clear language of section 536.080 indicating its applicability to such boards.

2. The trial court also had assessed costs of the proceedings against the Board. While this issue is mooted by the result reached, it is appropriate to note that the Board would not be liable for costs as it is a state agency, and no statute authorizes the recovery of costs against it. *State ex inf. Ashcroft v. Riley*, 590 S.W.2d 903, 907 (Mo.banc 1979); *Labor's Educational & Political Club-Independent v. Danforth*, 561 S.W.2d 339, 350 (Mo.banc 1977); *Automagic Vendors, Inc. v. Morris*, 386 S.W.2d 897, 900–01 (Mo.banc 1965); *Nicolai v. State*, 622 S.W.2d 764, 765 (Mo.App.1981); *State ex rel. Danforth v. Independence Dodge, Inc.*, 494 S.W.2d 362, 371 (Mo.App.1973).