

# MISSOURI COURT OF APPEALS
## WESTERN DISTRICT

| | | |
|---|---|---|
| TAMMY WALSH, | ) | |
| | ) | |
| Appellant, | ) | |
| | ) | |
| v. | ) | **WD86677** |
| | ) | |
| MISSOURI STATE BOARD OF | ) | |
| NURSING, | ) | **Filed: May 28, 2024** |
| | ) | |
| Respondent. | ) | |

**APPEAL FROM THE CIRCUIT COURT OF COLE COUNTY
THE HONORABLE JON E. BEETEM, JUDGE**

**BEFORE DIVISION ONE: LISA WHITE HARDWICK, PRESIDING JUDGE,
ALOK AHUJA, JUDGE, AND ANTHONY REX GABBERT, JUDGE**

Tammy Walsh appeals from the order of the Missouri State Board of Nursing ("Board") imposing additional discipline on her nursing license after she violated the terms of her probation. Walsh contends the requirement of an additional four years of mandatory alcohol and drug testing was arbitrary, capricious, unreasonable, unsupported by the evidence, and an abuse of discretion because she does not have a chemical dependency issue. For reasons explained herein, we affirm.

## FACTUAL AND PROCEDURAL HISTORY

Walsh is licensed by the Board as a registered professional nurse. In October 2019, Walsh entered into a settlement agreement with the Board. Walsh stipulated in the settlement agreement that she violated the Nursing Practice Act and that her license was subject to discipline for diverting and using medication and syringes from her employer. She agreed to a disciplinary hearing, which occurred in February 2020. In April 2020, the Board issued its findings of fact, conclusions of law, and disciplinary order ("initial disciplinary order") placing Walsh's license on probation for three years. The probationary terms required Walsh to abstain from alcohol and contract with a third-party administrator to participate in random drug and alcohol screenings. The third-party administrator contract required daily check-ins to determine if Walsh was required to submit to a test that day.

During the probationary period, Walsh twice failed to check in with the third-party administration within the required time window. She also failed to check in with the third-party administrator on a day she was selected to submit a sample for testing, and therefore, failed to report to a collection site to provide a sample. On three occasions, Walsh reported to a collection site and submitted samples showing low creatine readings, which can indicate dilution. In September 2022, Walsh reported to a collection site and her sample tested positive for the alcohol metabolites Ethyl Glucuronide (EtG) and Ethyl Sulfate (EtS).

In November 2022, the Board filed a probation violation complaint and determined, after a hearing, that Walsh violated the probationary terms in the initial

disciplinary order. Based on that finding, the Board ordered that Walsh's probationary period be extended four years.

Walsh filed a petition for judicial review in the circuit court challenging the extension of her probation. The circuit court entered judgment in favor of the Board. Walsh appeals. This court granted a stay of enforcement of the disciplinary order during pendency of the appeal.

STANDARD OF REVIEW

Following judicial review of the Board's disciplinary order, this court examines the decision of the agency, not the judgment of the circuit court. *Owens v. Mo. State Bd. Of Nursing*, 474 S.W.3d 607, 611 (Mo. App. 2015). Our review is limited to determining whether the Board's action: (1) violates a constitutional provision; (2) exceeds the Board's statutory authority or jurisdiction; (3) is unsupported by competent and substantial evidence upon the whole record; (4) is unauthorized by law; (5) is made upon unlawful procedure or without a fair trial; (6) is arbitrary, capricious, or unreasonable; or (7) involves an abuse of discretion. § 536.140.2. "The Board's decision is presumed valid, and the burden is on the party attacking it to overcome that presumption." *Lacey v. State Bd. of Reg. for the Healing Arts*, 131 S.W.3d 831, 837 (Mo. App. 2004). We must consider the entire record in determining whether there is sufficient competent and substantial evidence to support the decision. *Whispering Oaks RCF Mgmt. Co. v. Missouri Dep't of Health & Senior Servs.*, 444 S.W.3d 492, 500 (Mo. App. 2014). We determine questions of law *de novo*. *Id*.

ANALYSIS

Walsh raises three points on appeal. In Point I, she contends the order imposing an additional four years of mandatory alcohol and drug screenings was arbitrary, capricious, or unreasonable because she does not have a chemical dependency or impairment issue requiring such testing. Similarly, in Point II she asserts that, without any evidence of a chemical dependency issue, the additional disciplinary order is not supported by competent and substantial evidence. In Point III, Walsh claims the Board abused its discretion in ordering mandatory alcohol and drug testing for an additional four years because there was no evidence showing she had a chemical dependency issue and the order is intended to punish Walsh rather than protect the public. As these points concern the evidence supporting the Board's decision, we address Points I, II, and III together.

In response, the Board argues the additional disciplinary order was based on substantial evidence that Walsh violated her probationary terms multiple times and in multiple ways. "Substantial evidence is competent evidence that, if believed, has probative force upon the issues." *Jefferson City Apothecary, LLC v. Missouri Bd. of Pharmacy*, 499 S.W.3d 321, 330 (Mo. App. 2016). "An administrative agency acts unreasonably and arbitrarily if its decision is not based on substantial evidence." *Id.* "An agency action is capricious if it is whimsical, impulsive, or unpredictable." *Id.* "To meet basic standards of due process and to avoid being arbitrary, unreasonable, or capricious, an agency's decision must be made using some kind of objective data rather than mere surmise, guesswork, or gut feeling." *Id.*

4

Upon finding that a nurse "has violated any disciplinary terms previously imposed or agreed to pursuant to a settlement," Section 324.042 permits the Board to "impose as additional discipline any discipline it would be authorized to impose in an initial disciplinary hearing."[1]  With regard to such initial authorization, Section 335.066.3 provides, in relevant part:

> Upon a finding by the administrative hearing commission that the grounds, provided in subsection 2 of this section, for disciplinary action are met, the board may, singly or in combination, censure or place the person named in the complaint on probation on such terms and conditions as the board deems appropriate for a period not to exceed five years, or may suspend, for a period not to exceed three years, or revoke the license, certificate, or permit.

"The severity of discipline to be imposed rests in the discretion of the Board." *Jefferson City Apothecary*, 499 S.W.3d at 330.  "The Board's decision as to discipline will be upheld unless its determination is: unsupported by competent and substantial evidence; arbitrary, capricious or unreasonable; an abuse of discretion; or unauthorized by the law." *Id.* (internal quotation marks and citation omitted).  "Discretion is abused when the ruling is clearly against the logic of the circumstances then before the court and is so arbitrary and unreasonable as to shock the sense of justice and indicate a lack of careful consideration." *Id.*  "On appeal, a court will rarely interfere with sanctions imposed by an administrative board that are within the statutory authority of the board." *Id*.  "A part of the expertise of the members of the Board consists of the ability, drawn

---

[1]  All statutory references are to the Revised Statutes of Missouri 2016, as updated by the 2020 Cumulative Supplement.

5

from their knowledge of the industry practices and standards, to assess the gravity of the licensee's infractions, and to fit the sanction to the offense." *Id.*

Walsh does not dispute that she violated the terms of the initial disciplinary order. Instead, she maintains the additional disciplinary order is primarily premised upon her consuming cough medicine and committing a few minor violations. She insists the Board did not afford due weight to the evidence of her good character and competence as a nurse from medical staff and her mental health counselor, two chemical dependency evaluations showing no substance abuse disorder or need for substance abuse treatment, and the lack of evidence showing impairment or conduct that jeopardizes patient safety.

Evidence at the additional disciplinary hearing shows Walsh admitted to engaging in conduct that violated the terms of her probation:

COUNSEL: What was the basis, as far as your understanding, of why the Board chose to discipline you for [a] probation violation in this case?

WALSH: I had like two missed check-ins. I had a couple like two or three dilute urines with a PEP test following it that was negative, so that kind of eliminated the dilute problem. I had one positive EtG test for metabolites. Out of 44 tests, that was the only time any drug or alcohol has ever been detected on any of my screens. They were negative before, during and after. It is just this was one occasion for the metabolites of alcohol.

COUNSEL: And that one occasion, was that a test that took place on September 21 of 2022?

WALSH: Correct.

COUNSEL: And a test in which it was found that you were positive for metabolites of alcohol, EtG and EtS?

WALSH: Yes.

6

Walsh testified to each of these violations. She explained that she twice missed the third-party administrator check-in because she experienced anxiety over Election Day and internet issues at work. Walsh said her diluted samples were caused by accidentally overhydrating at work and complications she experienced after surgery. Lastly, Walsh offered explanations that she did not realize that she drank a "special orange juice" beverage that a family member placed in her refrigerator and that she inadvertently consumed cough syrup containing alcohol without fully reading the label.

However, the Board also considered evidence that Walsh denied to a medical review officer that she consumed alcohol but stated she consumed Vicks 44 cough medicine. The Board reviewed the medical review officer's conclusion that there was no acceptable medical explanation for the positive EtG and EtS results. The Board is the judge of the credibility of witnesses and the weight and value given to their evidence. *Dorman v. State Bd. of Registration for Healing Arts*, 62 S.W.3d 446, 455 (Mo. App. 2001).

Walsh's assertion that the Board had no basis to monitor her practice discounts the multiple violations of her probation and her past conduct of diverting and consuming drugs requiring a prescription from her employer for several months. The record before the Board established Walsh knew what conduct would constitute a violation of her probation. During a meeting with the Director of Compliance, Walsh signed the initial disciplinary order acknowledging that she understood the requirements of the probation. The terms contained in the initial disciplinary order specifically required Walsh to abstain from the use or consumption of alcohol in any form, including over-the-counter products

7

and cough syrups. The order stated diluted samples, failures to check in with the third-party administrator within the required time window, and failing to submit a sample for testing constituted probation violations. Any one of these violations Walsh committed served as an independent basis to impose additional discipline on her nursing license. *See Cooper v. Missouri State Bd. of Pharmacy*, 774 S.W.2d 501, 504 (Mo. App. 1989). These clear violations of Walsh's probationary terms formed the basis of the Board's decision to impose additional discipline on her license.

Walsh argues the Board disregarded the fact that she is not an impaired nurse and that the order serves as punishment rather than protection. However, Walsh cites to no authority requiring the Board to find evidence of chemical dependence or impairment before imposing abstinence from alcohol and mandatory alcohol and drug testing as a condition of her probation. In addition, to the extent Walsh contends that the original order requiring her to submit to drug testing was unwarranted given the nature of her underlying misconduct, Walsh had the opportunity to seeking judicial review of the original disciplinary order when it was entered; we will not permit her to collaterally attack the original conditions of her probation in this probation violation proceeding.

"The duty of the Board is broader than responding to harm—its duty is to proactively seek to prevent harm by members of this profession before it happens when the Board has knowledge of . . . professional wrongdoing[.]" *Koetting v. State Bd. of Nursing*, 314 S.W.3d 812, 818 (Mo. App. 2010). "The focus of licensing laws, and suspension or revocation provisions included therein, is on protection of the public served by such licensed professionals. Cases uniformly reflect this focus with respect to the

disciplining of various occupational licenses." *Johnson v. Missouri Bd. of Nursing Adm'rs*, 130 S.W.3d 619, 645 (Mo. App. 2004) (citation omitted). "The purpose of disciplinary action against licensed professionals is not the infliction of punishment, but rather the protection of the public." *Duncan v. Missouri Bd. for Architects, Pro. Engineers & Land Surveyors*, 744 S.W.2d 524, 538 (Mo. App. 1988). The Board has a wide range of statutory sanctions available for professional discipline. *Kerwin v. Missouri Dental Bd.*, 375 S.W.3d 219, 232 (Mo. App. 2012). "The appropriate sanction within that range is confided to the discretion of the Board." *Id.*

The record shows the Board's initial concern with Walsh's practice of nursing was her problem with continuously diverting and consuming medications, one of which required a prescription, from her employer. Following each of the several violations of her probationary terms, the Board was authorized to place Walsh's nursing license on probation for up to five years. Accordingly, the Board's decision to extend Walsh's probation for four years subject to the same terms as the initial disciplinary order "was within the statutory range of discipline available to the Board, and such discipline was supported by competent and substantial evidence and was not arbitrary, capricious, unreasonable." *Jefferson City Apothecary*, 499 S.W.3d at 331. We find no abuse of discretion in the Board's decision. Points I, II, and III are denied.

9

**CONCLUSION**

The judgment is affirmed, and the order staying enforcement of the disciplinary order is extinguished.

_____
LISA WHITE HARDWICK, JUDGE

All Concur.

10